**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

| | | | |
|---|---|---|---|
| RINA KRIHELY, | : | | |
| | : | | |
| Plaintiff, | : | Civil Action No.: | 22-02973 (RC) |
| | : | | |
| v. | : | Re Document No.: | 4 |
| | : | | |
| ALEJANDRO MAYORKAS, *et al.*, | : | | |
| | : | | |
| Defendants. | : | | |

**MEMORANDUM OPINION**

**GRANTING DEFENDANTS' MOTION TO DISMISS**

**I.  INTRODUCTION**

Plaintiff Rina Krihely sues Alejandro Mayorkas in his official capacity as Secretary of the Department of Homeland Security; Merrick Garland in his official capacity as Attorney General; Ur Jaddou in her official capacity as Director of United States Citizenship and Immigration Services ("USCIS"); and Alissa Emmel in her official capacity as Chief of the Immigrant Investor Program Office of USCIS (collectively, "Defendants"). Ms. Krihely seeks relief under the Administrative Procedure Act ("APA") (5 U.S.C. §§ 555, 706) and the Mandamus Act (28 U.S.C. § 1361) based on allegations that Defendants have unreasonably delayed adjudication of her I-526 immigration petition. Defendants moved to dismiss the complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6) on January 23, 2023 and submitted an erratum on February 3, 2023. Ms. Krihely filed an opposition on March 31, 2023, and Defendants filed a reply on April 7, 2023. For the reasons set forth below, the Court grants Defendants' motion to dismiss.

## II.  FACTUAL BACKGROUND

The U.S. government's EB-5 program allots "immigrant investor visas" to those who make a qualifying investment in the United States.  *See* Compl. ¶ 25, ECF No. 1; 8 U.S.C. § 1153(b)(5)(A)(i)–(ii).  Immigrants who contribute to "employment creation" of at least ten jobs by investing at least $1,000,000 in a new commercial enterprise or at least $500,000 in a "targeted employment area" are eligible for an EB-5 visa.[1]  *See* 8 U.S.C. § 1153(b)(5)(A)(i)–(ii), (b)(5)(C)(i)–(ii); Compl. ¶ 25; Mem. P. & A. Supp. Defs.' Mot. Dismiss ("Defs.' Mot.") at 1–2, ECF No. 5-1.  One way to satisfy the EB-5 requirements is to invest in a designated "regional center," which pools investments from immigrant investors.  *See* Defs.' Mot. at 2; *Devani v. U.S. Citizenship & Immigr. Servs.*, No. 22-cv-01932, 2023 WL 2913645, at *1 (D.D.C. Apr. 12, 2023).

Congress designed the Regional Center Program as a temporary or "pilot" program that it has "periodically reauthorized."  *Da Costa v. Immigr. Inv. Program Off.*, No. 22-5313, 2023 WL 5313526, at *3 (D.C. Cir. Aug. 18, 2023).  However, the Regional Center Program's statutory authorization expired on July 1, 2021.  Defs.' Mot. at 7.  About eight and a half months later, on March 15, 2022, the President signed an appropriations bill into law that included a standalone bill revising and reauthorizing the Regional Center Program.  *See* Consol. Appropriations Act, 2022, Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1070–1100; Defs.' Mot. at 7.  During the period without authorization, USCIS placed previously filed I-526 petitions on hold; USCIS then resumed processing them upon reauthorization.  Defs.' Mot. at 7–8; *see EB-5*

---

[1] Subsequent to Ms. Krihely's petition, Congress increased the minimum investment levels to $1,050,000 and $800,000, respectively.  *See* Consol. Appropriations Act, 2022, Pub. L. No. 117-103, Div. BB, § 103, 136 Stat. 1070, 1072.

*Reform and Integrity Act of 2022 Listening Session* ("USCIS Listening Session"), USCIS, at 4–5 (Apr. 29, 2022), https://perma.cc/T2K9-YKCU?type=standard.

Immigrants seeking to obtain permanent residency through the EB-5 program must first file with USCIS an I-526 petition containing evidence of a qualifying investment. *See Da Costa*, 2023 WL 5313526, at *2; 8 C.F.R. § 204.6(a). "Once the petition is processed and a visa becomes available—which may take years—the immigrant advances to conditional lawful permanent residence status." *Punt v. USCIS*, No. 22-1218, 2023 WL 157320, at *1 (D.D.C. Jan. 11, 2023) (internal quotations omitted). After two years, the petitioner may seek removal of the "conditional" basis of lawful permanent resident status. *See id.* The I-526 petition is therefore a preliminary step in the process toward becoming a lawful permanent resident. Defs.' Mot. at 3; *see Da Costa*, 2023 WL 5313526, at *2.

Ms. Krihely invested $500,000 in a Regional Center. Compl. ¶ 19. On November 20, 2019, she filed her Form I-526 petition with Defendant USCIS. Compl. ¶ 2. On October 2, 2022, approximately thirty-four months after submitting her petition, Ms. Krihely filed the complaint at bar. At the time Ms. Krihely filed her complaint, the case processing time for I-526 petitions, determined by the amount of time by which 80 percent cases are completed, was 52.5 months. Compl. Ex. C, ECF No. 1-2. USCIS does not allow petitioners to place a request to expedite adjudication until the application has been pending for longer than the "normal [case] processing time[]." Compl. ¶ 10.

### III. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must "state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). The complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A plaintiff's factual allegations, therefore, "must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Twombly*, 550 U.S. at 555 (citations omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are insufficient. *Iqbal*, 556 U.S. at 678.  A court need not accept a plaintiff's legal conclusions as true, *see id.*, nor must a court presume the veracity of legal conclusions that are couched as factual allegations, *see Twombly*, 550 U.S. at 555.

"In determining whether a complaint fails to state a claim, the court may consider only the facts alleged in the complaint, any documents either attached to or incorporated in the complaint, and matters of which [the court] may take judicial notice." *Palakuru v. Renaud*, 521 F. Supp. 3d 46, 49 (D.D.C. 2021) (cleaned up).  A court may take judicial notice of information posted on official public websites of government agencies. *Devani*, 2023 WL 2913645, at *3, n.1 (citing *Arab v. Blinken*, 600 F. Supp. 3d 59, 63 n.1 (D.D.C. 2022)).

Ms. Krihely invokes the Court's mandamus jurisdiction under 28 U.S.C. § 1361 to compel USCIS to adjudicate her I-526 petition.[2]  Compl. ¶ 46.  Courts may issue writs of mandamus to "compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." 28 U.S.C. § 1361.  "[C]onsideration of any mandamus petition starts from the premise that issuance of the writ is an extraordinary remedy, reserved only for the most transparent violations of a clear duty to act." *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (internal quotation marks and citations omitted).  The central

---

[2] The Court evaluates claims of unreasonable delay under both the Mandamus Act and the APA using the same standard. *Mokkapati v. Mayorkas*, No. 21-1195, 2022 WL 2817840, at *4 (D.D.C. July 19, 2022); *Palakuru*, 521 F. Supp. 3d at 54.

4

question, then, is "whether the agency's delay is so egregious as to warrant mandamus." *Id.* (quoting *Telecomms. Research & Action Ctr. v. FCC* ("*TRAC*"), 750 F.2d 70, 79 (D.C. Cir. 1984)).

>   Six factors guide the Court's analysis for claims of unreasonable delay:
>
>   (1) the time agencies take to make decisions must be governed by a "rule of reason";
>
>   (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason;
>
>   (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake;
>
>   (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority;
>
>   (5) the court should also take into account the nature and extent of the interests prejudiced by delay; and
>
>   (6) the court need not find any impropriety lurking behind agency lassitude in order that agency action is "unreasonably delayed."

*TRAC*, 750 F.2d at 80 (cleaned up). "Resolution of a claim of unreasonable delay is ordinarily a complicated and nuanced task requiring consideration of the particular facts and circumstances before the court." *Mashpee Wampanoag Tribal Council, Inc. v. Norton* ("*Mashpee*"), 336 F.3d 1094, 1100 (D.C. Cir. 2003). However, courts apply the *TRAC* factors at the motion-to-dismiss phase of cases involving unreasonable delay where the "record contains enough facts to evaluate the *TRAC* factors." *Punt*, 2023 WL 157320, at *3; *see Devani*, 2023 WL 2913645, at *3 (collecting cases).

## IV. ANALYSIS

Ms. Krihely contends that it would be "premature" at the motion-to-dismiss stage to analyze the *TRAC* factors without discovery. *See* Pl.'s Resp. Opp'n Defs.' Mot. Dismiss ("Pl.'s

5

Opp'n") at 10, 16–17, ECF No. 7. However, the record "contains enough facts to evaluate the *TRAC* factors," so the Court proceeds accordingly. *See Punt*, 2023 WL 157320, at *3. The D.C. Circuit has identified the first *TRAC* factor as the "most important" of the six. *Devani*, 2023 WL 2913645, at *3 (citing *Core Commc'ns*, 531 F.3d at 855). Meanwhile, the fourth factor "carries the greatest weight in many cases." *Milligan v. Pompeo*, 502 F. Supp. 3d 302, 319 (D.D.C. 2020). Therefore, the Court begins its evaluation with these most important factors. Neither favors relief.

### A. First Factor

The first *TRAC* factor "requires an inquiry into whether there is any rhyme or reason for the Government's delay." *Palakuru*, 521 F. Supp. 3d at 50–51 (internal quotations omitted). "[T]he Court must determine 'whether the agency's response time complies with an existing specified schedule and whether it is governed by an identifiable rationale.'" *Devani*, 2023 WL 2913645, at *3 (quoting *Ctr. for Sci. in the Pub. Int. v. FDA*, 74 F. Supp. 3d 295, 300 (D.D.C. 2014)).

USCIS's adjudication of I-526 petitions conforms to a rule of reason. On July 18, 2023, USCIS modified its petition-review system, announcing that it will group petitions filed on or before November 30, 2019 by new commercial enterprise within the queue where the project has been reviewed and a visa is or soon will be available. *See USCIS Updates Visa Availability Approach for Managing Form I-526 Petition Inventory* ("USCIS Alert"), USCIS (July 18, 2023), https://www.uscis.gov/newsroom/alerts/uscis-updates-visa-availability-approach-for-managing-form-i-526-petition-inventory; Notice Suppl. Auth. at 2, ECF No. 9. Within that queue, USCIS will order petitions in a "first-in, first-out" methodology, determined "by date of the earliest filed petition in that queue for each [new commercial enterprise]." *See Update to Visa Availability*

*Approach for Form I-526* ("USCIS Update"), USCIS (last updated July 18, 2023), https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/update-to-visa-availability-approach-for-form-i-526.  The purpose of the new policy is to "increase productivity" and "more efficiently process Form I-526 petitions" by allowing the agency to consider petitions related to the same commercial enterprise simultaneously, given that the "project documents are often the same."  *See id.*

USCIS's recent update did not change its general adherence to the "visa availability approach," whereby petitioners "from countries where visas are currently available or soon to be available" receive priority.  Defs.' Mot. at 12; *Devani*, 2023 WL 2913645, at *3; *Questions and Answers: EB-5 Immigrant Investor Program Visa Availability Approach* ("USCIS Q. & A."), USCIS (last updated Aug. 28, 2023), https://www.uscis.gov/working-in-the-united-states/permanent-workers/employment-based-immigration-fifth-preference-eb-5/questions-and-answers-eb-5-immigrant-investor-program-visa-availability-approach.  For petitions where visas are available now or soon, USCIS follows a "first-in, first-out" approach.[3]  Defs.' Mot. at 13; *Telles v. Mayorkas*, No. 21-395, 2022 WL 2713349, at *3 (D.D.C. July 13, 2022).

This Court agrees with many others in this District that the "visa availability approach" adheres to an "identifiable rationale."  *See Devani*, 2023 WL 2913645, at *3; *see Da Costa*, 2023 WL 5313526, at *6 (concluding that USCIS "employs a rule of reason to adjudicate Form I-526 petitions").  "The availability method ensures that candidates for whom a visa is available have their applications processed in a timely manner."  *Da Costa v. Immigr. Inv. Program Off.*, No.

---

[3] Pursuant to the July 2023 update, petitions with visas available now or soon that are linked to either a reviewed project (with multiple investors) or a "non-pooled" standalone project are first grouped by new commercial enterprise, and then ordered according to the "first-in, first out" approach.  *See* USCIS Update.

7

22-cv-1576, 2022 WL 17173186, at *8 (D.D.C. Nov. 16, 2022), *aff'd*, No. 22-5313, 2023 WL 5313526 (D.C. Cir. Aug. 18, 2023).  Moreover, a "first-in, first-out" workflow is "generally treated as a rule of reason."  *Telles*, 2022 WL 2713349, at *3 (quotations omitted).  USCIS's recent update, which aims to increase efficiency and reduce petition backlogs, *see* USCIS Update, maintains—if not enhances—a system with a "specified schedule" and "identifiable rationale," *see Devani*, 2023 WL 2913645, at *3.

Contrary to Ms. Krihely's assertions, the suspension of the Regional Center Program does not negate the rule of reason; rather, USCIS resumed processing existing I-526 petitions upon reauthorization of the program, preserving petitioners' places in line.  *See* Reply Supp. Defs.' Mot. Dismiss ("Defs.' Reply") at 10, ECF No. 8; USCIS Listening Session at 4–5.  Ms. Krihely also suggests that USCIS has "not complied with its own purported visa availability approach."  Pl.'s Opp'n at 18–19.  But this bare assertion, without more, fails to allege factual matter sufficient to "raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Accordingly, the first factor weighs in favor of Defendants.

### B.  Fourth Factor

The fourth *TRAC* factor concerns the "effect of expediting delayed action on agency activities of a higher or competing priority."  *TRAC*, 750 F.2d at 80.  This factor is so weighty that the D.C. Circuit has "refused to grant relief, even though all the other factors considered in *TRAC* favored it, where a judicial order putting the petitioner at the head of the queue would simply move all others back one space and produce no net gain."  *Mashpee*, 336 F.3d at 1100 (cleaned up).  Because this is precisely the case here, the fourth factor favors Defendants.

When Ms. Krihely filed her complaint, her I-526 petition had been pending well short of the 52.5-month period by which USCIS adjudicates eighty percent of petitions.  Compl. ¶ 10.

Ms. Krihely's arguments, therefore, do not "account for the possibility that many others in [her] situation . . . filed their petitions before [she] did." *Telles*, 2022 WL 2713349, at *4 (internal quotations omitted); *accord Punt*, 2023 WL 157320, at *4. Were this Court to grant Ms. Krihely relief, it would be allowing "line jumping ahead of other eligible petitioners who had been waiting longer." *See Da Costa*, 2023 WL 5313526, at *5.

Ms. Krihely does not allege that USCIS treated her differently from anyone else similarly situated. *See Punt*, 2023 WL 157320, at *4. Consequently, granting her relief would effectively let her "cut in line in front of others . . . simply because [she] sued in this Court." *See Bega v. Jaddou*, No. 22-cv-02171, 2022 WL 17403123, at *8 (D.D.C. Dec. 2, 2022), *aff'd sub nom. Da Costa v. Immigr. Inv. Program Off.*, No. 22-5313, 2023 WL 5313526 (D.C. Cir. Aug. 18, 2023) (cleaned up). "It makes little sense to incentivize the creation of a queue of visa applicants within the docket of the federal judiciary to determine the order of the queue for visa applications." *Manzoor v. USCIS*, No. 21-2126, 2022 WL 1316427, at *6 (D.D.C. May 3, 2022). Particularly given the recent reauthorization of the Regional Center Program, USCIS is entitled to deference to set its own priorities and allocate its resources. *See Mokkapati*, 2022 WL 2817840, at *6; *see also Telles*, 2022 WL 2713349, at *5.

Ms. Krihely disputes "whether there is a line" and requests discovery to investigate the existence of the queue and, if one exists, assess "what modicum of harm would result if Plaintiff received an adjudication." Pl.'s Opp'n at 21. However, Ms. Krihely's conclusory suggestion that USCIS does not follow a queue in I-526 adjudication, without further factual basis, fails to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555. Moreover, "[t]he existence of a backlog of I-526 petitions is unfortunately not hypothetical." *Da Costa*, 2022 WL 17173186, at *10 (rejecting a plaintiff's argument that without discovery, the court

cannot assess whether there is a line for I-526 adjudication); USCIS Q. & A. ("Workflows are generally managed in FIFO [first-in, first-out] order when a visa is available or will be available soon.").

The Court is inclined to agree with Ms. Krihely that the "normal processing time" for an I-526 petition, 52.5 months, or nearly four-and-a-half years, is substantial.[4] *See Da Costa*, 2023 WL 5313526, at *7 (describing a wait of four-and-a-half years for processing as "undoubtedly maddening"); *Uranga v. USCIS*, 490 F. Supp. 3d 86, 105 (D.D.C. 2020) (declaring a four-year wait for adjudication of U-visas to be unreasonable, but denying the plaintiff's mandamus action). But according to Circuit precedent, such a finding alone does not "justify judicial intervention, even when the agency's pace is . . . 'glacial.'" *Uranga*, 490 F. Supp. 3d at 105 (quoting *Mashpee*, 336 F.3d at 1097) (internal citation omitted). In the *TRAC* context, the reasonableness of a delay "cannot be decided in the abstract" but rather depends upon agency-specific determinations. *Mashpee*, 336 F.3d at 1102. Furthermore, Ms. Krihely does not point to any "unique considerations that warrant an expedited review" of her petition, nor does she contend that the agency has treated her unfairly or differently than any of the other applicants waiting in the I-526 queue.[5] *Uranga*, 490 F. Supp. 3d at 105.

---

[4] The Court reiterates, however, that at the time Ms. Krihely filed her complaint, she had not waited 52.5 months; rather, approximately 34 months had passed. For nine of those months, the Regional Center Program lacked congressional authorization, and most courts in this District have excluded those months for the purpose of calculating an agency's delay. *See, e.g.*, *Devani*, 2023 WL 2913645, at *4. From the perspective of the Court, then, Ms. Krihely's petition had, as of the date on which she filed her complaint, therefore been stalled for approximately 25 months—a length that, while considerable, falls well within the range that courts in this District have found to be not unreasonable as a matter of law. *See Devani*, 2023 WL 2913645, at *4 (32 months); *Bega*, 2022 WL 17403123, at *7 (32 to 40 months); *Telles*, 2022 WL 2713349, at *4 (33 months); *Punt*, 2023 WL 157320, at *4 (20 months).

[5] Ms. Krihely argues that USCIS's pause in adjudicating I-526 petitions during the sunset period without statutory authorization was incorrect and unlawful, relying heavily on a single out-of-Circuit case, *Behring Reg'l Ctr., LLC v. Mayorkas*, No. 22-cv-02487, 2022 WL 2290594

"Since ordering the agency to adjudicate [Ms. Krihely's petition] now would merely move [her] up the line, and move everyone else back, in the view of the Court of Appeals, that would create more unfairness than it would remedy given the likely number of equally worthy applicants." *See id.* Accordingly, the Court agrees with other courts in this District that have found that the fourth *TRAC* factor weighs against relief in substantially similar situations. *See, e.g.*, *Punt*, 2023 WL 157320, at *4; *Devani*, 2023 WL 2913645, at *5.

### C. Second Factor

The second *TRAC* factor prompts the Court to consider whether "Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed." *TRAC*, 750 F.2d at 80. Here, this factor tips somewhat in Ms. Krihely's favor.

Congress declared that "[i]t is the sense of Congress that the processing of an immigration benefit application should be completed not later than 180 days after the initial filing of the application." 8 U.S.C. § 1571(b). This provision applies to I-526 petitions. *See id.* The parties agree that this "sense of Congress" is not mandatory or binding on USCIS. *See* Compl. ¶ 27; Defs.' Mot. at 16. Indeed, "a sense of Congress resolution is not law." *See Devani*, 2023 WL 2913645, at *4 (cleaned up). Many courts have thus concluded that the language is merely "hortatory" and "precatory," ignoring the 180-day timeline. *See, e.g.*, *id.*;

---

(N.D. Cal. June 24, 2022). *See* Pl.'s Opp'n at 6–9, 13, 18. But as a court in this District found in an opinion affirmed by the D.C. Circuit, the Government's position in *Behring* is not in tension with its position here. *See Da Costa*, 2022 WL 17173186, at *7. In *Behring*, the Government claimed that it had authority to continue to regulate existing Regional Centers during the sunset period and to process forms granting *permanent* residency to immigrant investors—but not to process I-526 petitions for *conditional* residency. *Id.* Moreover, the plain language of the statute creating the Regional Center Program did not establish any obligation for USCIS to continue processing I-526 forms after June 30, 2021; instead the EB-5 program was a "pilot" whose authorization lapsed. *Id.* at *6.

11

*Punt*, 2023 WL 157320, at *4; *Da Costa*, 2023 WL 5313526, at *9 (describing Congress's statement as "aspirational").

However, "the question posed in *TRAC* is not whether Congress has established a binding timetable," but "whether Congress has 'provided . . . [an] indication of the speed with which it expects the agency to proceed.'" *Uranga*, 490 F. Supp. 3d at 103 (quoting *TRAC*, 750 F.2d at 80). Congress's language in § 1571(b) certainly provides such an indication. *See Thakker v. Renaud*, No. 20-1133, 2021 WL 1092269, at *6 (D.D.C. Mar. 22, 2021). "[A]fter all, Congress had the option of saying nothing on the subject at all." *Uranga*, 490 F. Supp. 3d at 103; *accord Telles*, 2022 WL 2713349, at *4. Here, Ms. Krihely's application had been pending for over two years at the time she filed her complaint, excluding the period where the Regional Center Program lacked congressional authorization—far longer than Congress's stated goal of six months. Consequently, this Court joins others in this District in finding that the second factor tips in Plaintiff's favor. *See Thakker*, 2021 WL 1092269, at *6; *Uranga*, 490 F. Supp. 3d at 103; *Telles*, 2022 WL 2713349, at *4. Even so, because the 180-day threshold is "aspirational, not mandatory," the Court "weigh[s] it accordingly." *Telles*, 2022 WL 2713349, at *4.

### D. Third and Fifth Factors

The third and fifth *TRAC* factors are "often considered in tandem." *Devani*, 2023 WL 2913645, at *4. Together, these factors prompt the Court to consider the impact of delay on the plaintiff-petitioner. *See TRAC*, 750 F.2d at 80. When the harm is primarily economic and "human health and welfare" are not at stake, these factors generally weigh in favor of the agency. *See id.*; *Bega*, 2022 WL 17403123, at *7. Conversely, the "prolonged and indefinite separation of families" has tipped the third and fifth factors in favor of plaintiffs. *See Mokkapati*, 2022 WL 2817840, at *6.

12

By contrast, the financial risks that a petitioner has undertaken to apply for an EB-5 visa are "insufficient to tip *TRAC* factors three and five in [the petitioner's] favor." *Da Costa*, 2023 WL 5313526, at *9. Difficulties planning for the future and protecting investments are "economic in nature" and thus favor defendants. *Bega*, 2022 WL 17403123, at *7; *see Telles*, 2022 WL 2713349, at *4. The assertion that the delay in processing petitions has put a plaintiff's life "on hold" fails to rise to the level of health-and-welfare harms on which the third and fifth factors hinge. *Thakker*, 2021 WL 1092269, at *7.

Here, Ms. Krihely alleges that as a result of the delay, she "suffers immediate and future harm in the form of distress, and professional disruption." Compl. ¶ 12. She further points to the uncertainty of having to wait, *see id.* ¶ 54, and her inability to "make any additional financial planning for the business or [her] family," "leave the U.S. for business trips which hurt future contractual obligations and potential business opportunities," and apply for business loans, *see* Compl. Ex. B ¶ 7, ECF No. 1-2. The Court does not question the disruption Ms. Krihely has experienced, but, excepting the "vague and conclusory reference to [dis]tress," *see Telles*, 2022 WL 2713349, at *4, her alleged harms are all "economic in nature," *see Bega*, 2022 WL 17403123, at *7.

The only other arguably non-economic harms that Ms. Krihely raises are that her temporary status has made health insurance too costly, putting her and her family at risk of not receiving "appropriate care," and that she cannot travel internationally to see her family. *See* Compl. Ex. B ¶ 7. These harms do not rise to the level of grave threats to health and welfare that tipped these factors toward the plaintiffs in other cases because Ms. Krihely's immediate family lives together, and she has not identified a "serious" threat to her or her family's health. *Compare Mokkapati*, 2022 WL 2817840, at *6 (holding that the plaintiffs' interest in reuniting

13

with loved ones abroad tipped the third and fifth *TRAC* factors in the plaintiffs' favor) *with Da Costa*, 2023 WL 5313526, at *10 (highlighting that the plaintiffs have not linked their personal circumstances to conditions in South Africa and have not alleged inability to access electricity, water, good, or shelter); *Punt*, 2023 WL 157320, at *5. Instead, the harms Ms. Krihely has identified are "inherent" risks of the EB-5 visa process. *See Da Costa*, 2022 WL 17173186, at *10. Consequently, the third and fifth *TRAC* factors weigh in favor of Defendants.

### E. Sixth Factor

Finally, the sixth and final factor, the question of agency impropriety, is neutral. Ms. Krihely alleges, without elaborating, that Defendants made a "policy decision to under-staff" the office charged with processing I-526 petitions, Compl. ¶ 43, but she "does not press these arguments in support of the sixth [*TRAC*] factor," *Palakuru*, 521 F. Supp. 3d at 53 (holding that the sixth factor was neutral where the plaintiff alleged that the Government had engaged in "purposeful delay" without providing further factual basis for the claim). Ms. Krihely's charge is nothing more than a "speculative observation" that lacks the "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *See Bega*, 2022 WL 17403123, at *8; *Thakker*, 2021 WL 1092269, at *8 (quoting *Iqbal*, 556 U.S. at 678). In fact, USCIS is "expand[ing] staffing" and updating technology to reduce backlogs in addition to its updates to the visa availability approach. *See Reducing Processing Backlogs*, USCIS (last accessed Sept. 20, 2023), https://egov.uscis.gov/processing-times/reducing-processing-backlogs; USCIS Update. Therefore, Ms. Krihely "has not alleged specific facts sufficient to permit a reasonable inference of bad faith here." *See Punt*, 2023 WL 157320, at *5. As in *Palakuru*, then, the sixth factor does not affect the Court's analysis.

\*\*\*

Taken together, all but the second of the *TRAC* factors weighs in favor of Defendants. The Court does not make light of the difficulties Ms. Krihely has faced as a result of the delayed adjudication of her Form I-526. All told, she has now waited over three-and-a-half years since filing her petition, a considerable period. But even the "troubling backlog of petitions" and the "increasingly sluggish pace of adjudication" are not sufficient for judicial relief here. *Da Costa*, 2023 WL 5313526, at *9.

## V.  CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss is **GRANTED**. An order consistent with this Memorandum Opinion is separately and contemporaneously issued.

Dated:  September 25, 2023                                         RUDOLPH CONTRERAS
                                                                    United States District Judge